# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of David Weldon Gantt, Respondent.

Appellate Case No. 2014-002495

Opinion No. 27483
Submitted December 1, 2014 – Filed January 21, 2015

## PUBLIC REPRIMAND

Lesley M. Coggiola, Disciplinary Counsel, and Barbara
M. Seymour, Deputy Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

Frank L. Eppes, Esquire, of Eppes & Plumblee, PA, of
Greenville, for respondent.

**PER CURIAM:** In this attorney disciplinary matter, the Office of Disciplinary
Counsel and respondent have entered into an Agreement for Discipline by Consent
(Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR). In the Agreement, respondent admits misconduct and consents to
the imposition of a confidential admonition or public reprimand with conditions.
We accept the Agreement and issue a public reprimand with conditions as set forth
hereafter in this opinion. The facts, as set forth in the Agreement, are as follows.

### Facts

In 1999, respondent began practicing law with Fredrick Scott Pfeiffer. Over the
years, Mr. Pfeiffer began to enter into various business ventures with clients, some
of which involved real estate investment and development. Respondent developed
a fairly extensive real estate practice and, from time to time, closed loans for
entities with which Mr. Pfeiffer was involved, either as an investor or owner.

Respondent represented a company (Client A) owned by three clients in connection with the development of a tract of property (Development 1). ABC Company, a company owned by Mr. Pfeiffer and his client, Client X, assisted Client A in financing the Development 1 project.

In April 2006, Mr. Pfeiffer approached respondent regarding a new development project (Development 2) with the three firm clients who owned Client A. Mr. Pfeiffer and the three clients told respondent that they needed someone with good credit to guarantee a loan in order to obtain financing for the Development 2 project. The clients agreed to give respondent an interest in the new development company, called Development 2 Company, as payment for legal fees incurred in connection with the Development 1 closings and other work performed for them. In exchange, respondent agreed to personally guarantee the loan obtained by Development 2 Company.

Mr. Pfeiffer prepared the corporate formation documents for Development 2 Company on behalf of respondent and the three clients. Although respondent believed that his interest in Development 2 Company was only ten percent, the corporate documents show respondent as a fifty percent shareholder. In any event, Development 2 Company was owned by respondent and the three clients from March 2006 until January 2007 when respondent relinquished his ownership interest.

Respondent acknowledges that it was a conflict of interest for him to engage in a business transaction with law firm clients. See Rule 1.8(a), RPC, Rule 407, SCACR. He acknowledges he failed to ensure that the terms of the transaction were fully disclosed and transmitted in writing in a manner that could be easily understood by the clients. He further admits that he failed to advise his clients in writing of the desirability of seeking the advice of independent legal counsel regarding the formation of Development 2 Company. Further, respondent acknowledges that he failed to communicate to the clients reasonably adequate information and an explanation about the material risks and reasonably available alternatives to entering into a partnership with their attorney. Respondent admits he failed to obtain his clients' informed consent, in writing signed by the clients, to proceeding with the formation of the partnership and waiving the conflict of interest.

During the time respondent held an ownership interest in Development 2 Company, the company borrowed the initial funds to purchase the Development 2 property with plans to subdivide it for development and sale. Respondent assisted

with the closings on the loans to finance the initial purchase of the property by Development 2 Company, including preparing mortgages to secure those loans.

Development 2 Company obtained loans of approximately two million dollars from ABC Company to make the initial purchase of Development 2. At various times during respondent's representation of Development 2 Company in connection with the funding and sales of Development 2, Mr. Pfeiffer transferred partial ownership of ABC Company to various companies in which respondent had an ownership interest, including the law firm.

To cover the remaining purchase price of Development 2, Development 2 Company obtained a loan of approximately four million dollars from Client B, a company owned by Client C. Respondent had represented both Client B and Client C in unrelated business litigation prior to assisting Development 2 Company with the financing from Client B.

Respondent acknowledges that it was a conflict of interest for him to engage in business transactions between law firm clients and companies in which he and/or his law partner held an interest. See Rule 1.8(a), RPC, Rule 407, SCACR. He acknowledges he failed to ensure the terms of the transactions were fully disclosed and transmitted in writing in a manner that could be easily understood by the clients. He further admits that he failed to advise his clients in writing of the desirability of seeking the advice of independent legal counsel regarding Development 2 Company borrowing funds to finance the purchase of Development 2 from companies owned or represented by respondent and/or his law partner. Further, respondent acknowledges that he failed to communicate to the clients reasonably adequate information and an explanation about the material risks and reasonably available alternatives to entering into transactions in which respondent and/or his law partner held an interest in the other contracting party. Respondent further admits that he failed to obtain his clients' informed consent, in writing signed by the clients, to proceeding with the financing transactions and waiving the conflicts of interest.

The terms of the purchase money loan from Client B required Development 2 Company to repay two million dollars within ninety days, then refinance the remaining amount of approximately two million dollars. There were two existing homes on the property that were not encumbered. Development 2 Company planned to sell those two parcels, then recruit several "investors" to purchase undeveloped lots and use those proceeds to pay off the loan balances to both Client

B and ABC Company.  Most of the individual investors borrowed money from traditional banks to fund their investments in Development 2.

There were three parties in these transactions:  1) the investor who was the borrower; 2) Development 2 Company which was the seller; and 3) the bank which was the lender.  Essentially, the investor borrowed money from the bank and paid that money to Development 2 Company at the closing.  The bank received a mortgage and promissory note from the investor.  The investor entered into a "buy-back" agreement with Development 2 Company in which Development 2 Company would make the monthly payments on the investor's mortgage during construction and would then buy the property back from the investor once the house was built.  Development 2 Company agreed to "buy-back" the property from the investor by paying off the mortgage balance and paying the investor a "fee" of between ten and fifty thousand dollars within one year.

In conducting these closings, respondent used a document entitled "Conflict of Interest Disclosure" (Disclosure) in which the investor/purchaser and Development 2 Company/seller acknowledged respondent's dual representation of the parties in the closing and his limited obligations to the lender.  Respondent added a sentence to the Disclosure that stated, "Finally, the closing attorney has a limited equity interest in the Seller."  Approximately half of the closing files did not contain a signed Disclosure.  Of those that did, many of the Disclosures were undated.  Respondent did not disclose to the banks or the investor/purchasers the extent of his interest in Development 2 Company.  Further, he did not disclose to the banks or the investor/purchasers that the funds were being used to repay Development 2 Company's obligations to ABC Company (respondent's partner's company) and to Client B (respondent's client's company) instead of for the construction of homes on the property.

Respondent conducted the closings on the sale of the two existing homes.  He disbursed the sales proceeds to Development 2 Company.  In addition, respondent conducted all of the closings on the "sale" parcels of Development 2 from Development 2 Company to individual investors.  Respondent paid the funds from the investor closings to Development 2 Company.  Respondent did not know how those funds were spent and had no control over the management of Development 2 Company's accounts.  Although he was a part owner of Development 2 Company, respondent did not examine any Development 2 Company financial records to confirm that the company had the financial ability to feasibly make the loan payments or buy back the properties as agreed.

In the course of trying to obtain commercial financing to restructure Development 2 Company and pay off the high interest loans from Client B and ABC Company, one traditional bank would not permit respondent to close the loan because of his conflict of interest. In January 2007, respondent transferred his interest back to Development 2 Company to allow the other members to restructure the company and refinance the project. This transfer of ownership did not release respondent's personal guarantees.

Ultimately, Development 2 Company defaulted on ABC Company's and Client B's loans. Further, the investors defaulted on many of the bank loans because Development 2 Company failed to make the required monthly payments to pay off the mortgages. Various lawsuits, bankruptcies, and receiverships followed. At least one bank alleged that it was not aware of the buy-back/investor arrangements and believed it was making construction loans and that the investors were in fact buyers.

Respondent acknowledges it was a conflict of interest for him to conduct closings on loans to which his company was a party. See Rule 1.7 and 1.8(a), RPC, Rule 413, SCACR. He further admits that his Disclosure form was insufficient because it failed to advise the parties in writing of the desirability of seeking the advice of independent legal counsel regarding the transactions. He further acknowledges that the Disclosure form was insufficient because he failed to communicate to the parties reasonably adequate information and an explanation about the material risks and reasonably available alternatives to going forward with a closing attorney who had an interest in the transactions. Respondent further admits that he failed to obtain the parties' informed consent, in writing signed by the parties, to proceeding with the closings and a waiver of the conflict of interest in each case.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.7 (notwithstanding conflict of interest, lawyer may represent client if: (1) lawyer reasonably believes lawyer will be able to provide competent and diligent representation to affected client; (2) representation is not prohibited by law; (3) representation does not involve the assertion of a claim by one client against another client represented by lawyer in the same litigation or other proceeding before a tribunal; and (4) affected client gives informed consent, confirmed in writing) and Rule 1.8(a) (lawyer shall not enter into a business transaction with client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to client unless:

(1) transaction and terms on which lawyer acquires interest are fair and reasonable to client and are fully disclosed and transmitted in writing in manner that can be reasonably understood by client; (2) client is advised in writing of desirability of seeking and is given reasonable opportunity to seek advice of independent legal counsel on transaction; and (3) client gives informed consent, in writing signed by client, to essential terms of transaction and lawyer's role in the transaction, including whether lawyer is representing client in transaction).

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR:  Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct).

### Conclusion

We find respondent's misconduct warrants a public reprimand.[1]  Accordingly, we accept the Agreement and publicly reprimand respondent for his misconduct. Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (the Commission) within thirty (30) days of the date of this opinion.  Further, respondent shall complete the Ethics School portion of the South Carolina Bar's Legal Ethics and Practice Program within one (1) year of the date of this opinion and provide certification of completion of the program to the Commission no later than ten (10) days after the conclusion of the program.

**PUBLIC REPRIMAND.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[1] Respondent's disciplinary history includes an admonition issued in 2010.  See Rule 7(b)(4), RLDE (Court can consider admonition in subsequent proceeding as evidence of prior misconduct solely upon issue of the sanction to be imposed).